UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 14-CR-0374 (PJS/JSM) |
| | Case No. 16-CV-4312 (PJS) |
| Plaintiff, | |
| v. | ORDER |
| LEVI WAYNE BURNS, | |
| Defendant. | |

Sarah E. Hudleston and Katharine T. Buzicky, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Rick E. Mattox, MATTOX LAW OFFICE, for defendant.

Defendant Levi Burns was charged with possession and distribution of child pornography. He pleaded guilty to the possession charge, went to trial on the distribution charge, and was convicted by a jury. On December 3, 2015, Burns was sentenced to 252 months' imprisonment and 10 years of supervised release. Burns did not appeal.

This matter is before the Court on Burns's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 111. Burns alleges that he instructed his attorney, Robert W. Owens, Jr., to file an appeal, but Owens failed to do so. The Court appointed attorney Rick E. Mattox to assist Burns with his motion, and the Court held

an evidentiary hearing at which it heard testimony from Burns, Owens, and Burns's father, and received documentary evidence.

I. BACKGROUND

A two-count indictment was returned against Burns on November 18, 2014. ECF No. 1. The first count charged him with distributing child pornography. The second count charged him with possessing child pornography.

On the eve of trial, Burns pleaded guilty to the possession charge, but he decided to go to trial on the distribution charge. ECF No. 76. That distribution charge related to a single video file—the "MinxMan" file—that a law-enforcement officer had downloaded via a peer-to-peer file-sharing network from a "share" folder on Burns's computer.

At trial, almost none of the material facts were in dispute. Among other things, the parties agreed that Burns had possessed the MinxMan file; that the MinxMan file contained a visual depiction of two minors engaging in sexually explicit conduct; that Burns knew that the visual depiction contained in the MinxMan file was of minors engaging in sexually explicit conduct; and that Burns had knowingly placed the MinxMan file in the share folder on his computer. *See* ECF No. 82 at 8. Moreover, Burns did not dispute that, because he had placed the MinxMan file in the share folder,

it was *available* for download by any member of his file-sharing network. Burns denied, however, that he had knowingly distributed the MinxMan file.

Burns's argument was creative. Burns said that he wanted to collect child pornography. But, he said, if a member of a peer-to-peer file-sharing network wants to collect child pornography from others, he has to be willing to share child pornography. Otherwise, the child-pornography community will ostracize him as a freeloader. For that reason, Burns placed the MinxMan file in his share folder. But Burns adjusted the "upload" settings of the software related to his file-sharing network so that, if anyone tried to download the MinxMan file from his share folder, the file would download so slowly that the user would soon give up and terminate the download. Thus, argued Burns, although he gave the *appearance* of being willing to distribute child pornography, he did not, in fact, *knowingly* distribute child pornography, because he reasonably believed that no one would spend hours trying to download a single video file from his share folder.

The jury was not persuaded and convicted Burns of distribution. ECF No. 83. The statutory maximum sentence that Burns was facing was 60 years—20 years for possession and 40 years for distribution, the two sentences to run consecutively. *See* 18 U.S.C. § 2252(b). The United States Sentencing Guidelines recommended that Burns be sentenced to 720 months in prison (the statutory maximum). ECF No. 105 at 1. The

government sought a sentence of 480 months. ECF No. 93 at 17. And Burns sought a sentence of 180 months (the statutory mandatory minimum). ECF No. 94 at 9.

On December 3, 2015, the Court imposed a sentence of 252 months on the distribution charge and 240 months on the possession charge, the two terms to be served concurrently. ECF No. 104. The Court gave many reasons for its decision to give Burns a substantial downward variance, including the following:

> Although Mr. Burns was convicted of distributing child pornography, this is essentially a possession case. In order to be able to add to his child-pornography collection, Mr. Burns gave the appearance of distributing child pornography. But, based on the evidence at trial, I have a hard time believing that anyone except Officer Hanson actually downloaded child pornography from Mr. Burns's computer.

ECF No. 119 at 26. At the conclusion of the hearing, the Court clearly informed Burns about his appellate rights:

> Mr. Burns, you have the right to appeal your conviction and your sentence. If you wish to appeal your conviction, or sentence, or both, you have to file a Notice of Appeal and you have to do so within 14 days after I enter the judgment in your case.

*Id.* at 28.

Immediately following the sentencing hearing, Owens and Burns's father attempted to meet with Burns in the U.S. Marshal's holding cell. ECF No. 130 at 17-18. Although the three men have somewhat different recollections of that meeting, all seem

-4-

to agree that the meeting was quickly aborted and that Owens and Burns did not have a meaningful discussion about whether he should appeal. *Id.* at 18, 19 (Owens); *id.* at 28 (Wayne Burns); *id.* at 31 (Levi Burns).

Over the next two weeks, Owens and Burns spoke three times by telephone—on December 4 (8 minutes), December 8 (14 minutes), and December 14 (16 minutes). *Id.* at 20-22. It appears that Burns attempted to call Owens on December 17, but was not able to reach him. *Id.* at 22, 34-35. No notice of appeal was filed by the December 17 deadline. In January 2016, Burns asked for and received a copy of his file from Owens. *Id.* at 23-24.

On December 19, 2016, Burns filed the pending motion under § 2255 to vacate, set aside, or correct his sentence. ECF No. 111. Burns cited a single ground for relief: "Counsel was ineffective, because counsel failed to file an appeal after being requested to do so." *Id.* at 4.

## II. ANALYSIS

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must normally show that (1) his counsel's performance "fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for [his]

counsel's . . . errors, the result of the proceeding would have been different." *Id.* at 688, 694. But when a defendant has instructed his attorney to file a notice of appeal and the attorney has failed to do so, the defendant has been denied counsel at a "'critical stage'" of the proceedings against him, and "'[n]o specific showing of prejudice [is] required,' because 'the adversary process itself [is] presumptively unreliable.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)). Thus, "an attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to section 2255 relief, no inquiry into prejudice or likely success on appeal being necessary." *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000).

It is undisputed that Owens did not file a notice of appeal on Burns's behalf. The only question, then, is whether Burns instructed Owens to file a notice of appeal. To prevail on his claim, Burns must show that he provided "*express* instructions with respect to an appeal" and that Owens failed to follow those express instructions. *Roe*, 528 U.S. at 478 (emphasis added). Put differently, Burns must prove not only that he instructed Owens to appeal, but that his instructions were "clear[]," *Parsons v. United States*, 505 F.3d 797, 798 (8th Cir. 2007), and "manifest[]," *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014).

Although Burns asserted in his § 2255 motion that he had "requested" Owens to file an appeal, ECF No. 111 at 4, the testimony of both Owens and Burns establishes that this is not true. For his part, Owens testified that he had been a criminal-defense lawyer—and a member of the Criminal Justice Act ("CJA") panel—for over 30 years. ECF No. 130 at 5. Owens testified that, in those 30-plus years, he had handled about 70 cases as a member of the CJA panel, and that he had handled 15 appeals before the Eighth Circuit. *Id.* Owens unequivocally testified that every time that he has been instructed by a client to file an appeal, he has filed an appeal:

> Q. Has there ever been a situation where a client instructed you to appeal and you explicitly refused to do so?
>
> A. Never.

*Id.* at 7-8. As Owens explained, filing a notice of appeal is easy for him: "It takes me about five seconds to tell my assistant to [file a notice of appeal]. And it takes her about five minutes to file a one-page notice of appeal." *Id.* at 6; *see also id.* at 8 ("[A] notice of appeal is just such a simple, one-page document that even if I thought there's no way we should do this, I would file it and then go back and talk to my client, maybe show him some research as to why I don't think this is going to fly, and if he still wanted to go with it, that is his or her right.").

Owens testified that he had no recollection of Burns ever "telling me or asking me" to file a notice of appeal. *Id.* at 10. Owens testified that, on the one hand, he had concluded that "an appeal would not be beneficial . . . [and] wouldn't get Mr. Burns anywhere." *Id.* at 9. Owens also testified that, on the other hand, "there could be a risk of a cross-appeal by the government regarding the sentence." *Id.* Although Owens had difficulty remembering the details of specific conversations with Burns, Owens testified that he shared his views with Burns and that "[Burns] agreed and did not ask me to file an appeal." *Id.*; *see also id.* at 23 ("[M]y belief to this day is that he was in agreement with that position."). Owens said that being instructed by a client to file a notice of appeal is "such a significant thing in my business that my belief is that if [Burns] had discussed wanting to appeal or told me to file a notice of appeal, that that is something that I would recall." *Id.* at 22-23.

For his part, Burns testified that he was "shocked" when he heard the Court explain at sentencing that one reason the Court was varying downward was that this was "essentially a possession case." *Id.* at 31; ECF No. 119 at 26. Burns understood the Court to be saying that Burns "didn't intend to distribute at all." ECF No. 130 at 40. This, of course, was a mistaken understanding by Burns, as the Court had already denied Burns's motion for a judgment of acquittal. But this misunderstanding gave Burns hope that he might have grounds for appealing his distribution conviction. *Id.*

Burns testified that Owens and he discussed whether he should appeal in three telephone conversations—on December 4, December 8, and December 14. *Id.* at 32-33 (December 4); *id.* at 33 (December 8); *id.* at 33-34 (December 14). According to Burns's description, the three conversations resembled each other. Burns called Owens because he wanted to talk about appealing; Owens told Burns that he did not have good grounds to appeal and that, if he filed a notice of appeal, he would risk a cross-appeal by the government; and Burns did not contest Owens's opinion. *Id.* at 32-34. Crucially, although Burns testified that he *wanted* to appeal, *id.* at 33, 34, Burns never testified that he *told* Owens—expressly or otherwise—to file an appeal.

Burns's attorney conceded as much at the end of the evidentiary hearing. Instead of arguing—as Burns had in his § 2255 motion—that Owens had refused to file a notice of appeal after being instructed by Burns to do so, Burns's attorney instead argued that Owens should have known that Burns wanted to appeal:

> We believe that Mr. Owens, in his viewing the good sentence from his point of view the Court gave to Mr. Burns, tried to talk him out of the appeal, tried to say don't do the appeal, tried to scare him off of the appeal by the potential threat of a 480-month sentence being imposed following a cross-appeal by the government. . . . [T]hat threat kept turning Mr. Burns into not actually saying the words, apparently, I want an appeal that Mr. Owens was wanting to hear. But Mr. Owens should've understood that during these four phone calls that that's what Mr. Burns wanted, and he should have filed a notice of appeal, Your Honor. And that's what Mr. Burns wanted. . . .

> . . . Mr. Burns . . . [is] not learned in the law. It's the lawyer's responsibility, it's the lawyer's obligation to give adequate advice and to understand what the client wants, not look for some magic words: I want my appeal. He was calling him four times. He wanted his appeal. He didn't get it, Your Honor.

*Id.* at 45-46.

Unfortunately for Burns, however, the law is not on his side. The Court finds that Owens consulted with Burns about an appeal in three phone conversations that totaled almost 40 minutes. The Court further finds that, in those telephone conversations, Owens consistently gave Burns the same reasonable advice: Burns was highly unlikely to overturn his distribution conviction (a conviction that, as a practical matter, added only one year to his total sentence); Burns had received a very favorable sentence (468 months less than the sentence recommended by the Sentencing Guidelines and 228 months less than the sentence sought by the government); and if Burns appealed, he would run the risk that the government would cross-appeal his sentence.[1] Finally, the Court finds that Burns never expressed any disagreement with Owens nor instructed him to file an appeal.

---

[1] At the evidentiary hearing, Burns and his attorney vaguely suggested that Owens provided ineffective assistance of counsel because he did not demand a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and because he called an expert witness whose testimony ended up harming Burns. ECF No. 130 at 41. Neither of these grounds for relief is mentioned in Burns's § 2255 motion, however.

The Eighth Circuit addressed precisely this set of facts in *United States v. Arvizu*, 270 F.3d 605 (8th Cir. 2001):

> If an attorney has consulted with his client about an appeal, he will not be found ineffective unless he fails to follow "express instructions with respect to an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). The record shows that [defense counsel] did consult with his client about his right to file an appeal, and [the defendant] concedes this point . . . . There is an absence of any evidence in the record to counter [defense counsel's] testimony that he never received express instructions from [the defendant] about his appeal. [The defendant] has therefore not made out an ineffective assistance claim . . . .

*Id.* at 606.

For these reasons, Burns's § 2255 motion is denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendant's motion to vacate, set aside, or correct his sentence [ECF No. 111] is DENIED.

2. No certificate of appealability will issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 12, 2017
    s/Patrick J. Schiltz
    Patrick J. Schiltz
    United States District Judge